UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ALICE KENNY,

                                     Plaintiff,

                  -against-

CATHOLIC CHARITIES COMMUNITY SERVICES,
ARCHDIOCESE OF NEW YORK; KEVIN SULLIVAN;
PAUL COSTIGLIO; and JOY JASPER,

                                     Defendants.
------------------------------------------------------------------------x

**COMPLAINT**

20 Civ. 3269

**JURY TRIAL DEMANDED**

Plaintiff Alice Kenny, by her attorneys, Law Office of Gregory P. Mouton, Jr., LLC,

respectfully alleges:

## NATURE OF THE ACTION

1.    Plaintiff was employed as Director of Special Projects – Communications and

Marketing Department for Defendant Catholic Charities Community Services, Archdiocese of

New York ("Catholic Charities") and brings this action for sex discrimination, age discrimination,

and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.*

("NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §§ 8-

101 *et seq.* ("NYCHRL").

2.    As outlined herein, an environment of discrimination exists at Catholic Charities,

created and tolerated by its Executive Direct, Kevin Sullivan.

3.    Defendant Sullivan's penchant for attractive women is a well-known joke

throughout Catholic Charities, and is even mentioned by him in his blog where he posts in the

third-person that Jennifer Lopez's scant attire catches his eye.  He has even placed a life-sized cutout of a scantily-clad Beyonce facing out of his glass-walled office.

4.     In addition to facing discrimination based on her age and gender, Ms. Kenny was constructively discharged as a result of the intolerable environment at Catholic Charities.  Among other things, her coworkers shunned her; her direct supervisor rarely spoke to her, and, when he did, he was rude and denigrating to her; many of her responsibilities were given to younger, male co-workers who were also tasked with supervising Ms. Kenny's work; Ms. Kenny was placed at a small desk in a hallway, unlike the other employees at Catholic Charities; Ms. Kenny was excluded from promotions and performance-based raises; Mr. Sullivan openly excluded her from events and travel, choosing instead to invite younger, more attractive women to participate in activities; her co-workers were allowed to take credit for her writing, as well as churn duplicate and plagiarized copy of her work resulting in her work being delisted and penalized by Google; and the human resources department failed to adequately investigate her complaints, and became complicit in the discrimination by threatening Ms. Kenny with retaliatory actions.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a) and 42 U.S.C. § 2000e-5(f)(3).

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

7.     Ms. Kenny demands a trial by jury in this action.

## PROCEDURAL REQUIREMENTS

8.      Ms. Kenny filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and received a Right to Sue Letter dated January 28, 2020.

9.      Following the commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

## PARTIES

10.     Plaintiff Alice Kenny is a resident of the County of Brevard, State of Florida.

11.     Upon information and belief, Defendant Catholic Charities Community Services, Archdiocese of New York ("Catholic Charities") is a domestic not-for-profit corporation organized and existing under the laws of the State of New York.

12.     Upon information and belief, Defendant Roman Catholic Archdiocese of New York ("RCANY") is a not-for-profit organization organized and existing under the laws of the State of New York.

13.     Catholic Charities has a principal place of business located at 1011 First Avenue, New York, New York.

14.     At all times relevant to this suit, Catholic Charities was Ms. Kenny's employer within the meaning of Title VII and New York City Admn. Code § 8-102(5).

15.     Ms. Kenny worked at Catholic Charities' offices in New York, New York at all times relevant to this Complaint.

16. Mr. Kevin Sullivan is the Executive Director and highest-ranking employee of Catholic Charities.

17. Paul Costiglio was the Director of Communications at Catholic Charities, and was Ms. Kenny's direct supervisor.

18. Joy Jasper is the Director of Human Resources at Catholic Charities.

STATEMENT OF FACTS

*MS. KENNY'S SUCCESS AT CATHOLIC CHARITIES*

19. Ms. Kenny was hired as a Writer/Editor in an independent contractor capacity by Catholic Charities on January 1, 2004.

20. Catholic Charities promoted Ms. Kenny to a staff position as Director of Special Projects – Communications and Marketing Department on October 27, 2008.

21. When Ms. Kenny was hired, Catholic Charities was in last place among eight competing organizations that participated in The New York Times' The Neediest Cases Fund, leaving Catholic Charities in danger of losing this significant funding and publicity stream. Ms. Kenny brought Catholic Charities to first place and kept it there for the following fourteen years. Ms. Kenny achieved this success despite competing with far larger, better funded organizations that assigned extensive staff to this project. Ms. Kenny was able to achieve this success through her individual reporting, writing, directing, and interpersonal skills with The New York Times staff and Catholic Charities agency heads, case workers, and clients. Ms. Kenny drew on her experience as an award-winning journalist with numerous stories published in The New York Times and other top news organizations. Catholic Charities used these published stories to provide legitimacy to its work and as backbone for its fundraising efforts. Ms. Kenny helped incorporate

published Neediest Cases stories into speeches given by the executive director, videos shown at fundraising galas, direct mail solicitations, etc.

22.     As a financial example of Ms. Kenny's success, she increased Catholic Charities' share of The Neediest Cases Fund funding by 50%, from $544,437.00 on May 1, 2018, to $815,852 on May 8, 2019.  The Neediest Cases Fund raised fewer overall donations in 2019 (in the amount of $5,464,873.00) than it did in 2018 (in the amount of $5,838,425.00).  Nonetheless, The New York Times increased Catholic Charities' share among the eight competing agencies to reflect Ms. Kenny's particular success identifying, interviewing, writing about, and promoting profiles as compared with the other participating organizations.

23.     As director, reporter, and writer of Catholic Charities' blog, Ms. Kenny increased readership by hundreds of percentage points every quarter every year since she was assigned responsibility for the blog in 2015.  She accomplished this by using innovative strategies to continually increase readership; finding and writing stories; taking photos; and editing blog posts after their online input prior to final publication.

24.     When Catholic Charities began tracking blog performance in 2015 it had 1,800 unique visits per quarter.  Ms. Kenny increased this to 29,937 unique visits per quarter over the next three years, an increase of 1285% by 2018.

25.     Ms. Kenny's success in increasing readership was in contrast to the declining readership across other social media platforms managed by other staff.

26.     Catholic Charities' affiliated agencies held Ms. Kenny in high regard as a result of the work she did for Catholic Charities.  Elinor Martin Residence for Mother & Child asked Ms.

Kenny to serve as their primary speaker at their annual gala in May 2016.  Grace Institute honored her with its Certificate of Appreciation at its annual appreciation event in December 2018.

27.    Ms. Kenny also received top marks in performance appraisals, the last of which she received on August 2, 2010.  Ms. Kenny's supervisor described her as "an asset, high performer, professional easy with getting the job done and done very well."  Her supervisor further wrote that Ms. Kenny "[s]hould have exec[utive] and supervisory responsibility for written and spoken communications in addition to current responsibilities."

28.    Since Ms. Kenny's August 2, 2010, performance appraisal, no other performance appraisals related to her have been completed, despite the fact that other employees have received performance appraisals.  As a result, Ms. Kenny has not been received any performance-based raises, and has not been afforded promotion opportunities, despite other employees receiving performance appraisals and resulting performance-based raises and promotions.

### DISCRIMINATON & HOSTILE WORK ENVIRONMENT
### AT CATHOLIC CHARITIES

29.    Mr. Kevin Sullivan is the Executive Director and highest-ranking employee of Catholic Charities.  He has held this post since 2001.

30.    During Ms. Kenny's time with Catholic Charities, Mr. Sullivan has made it clear that physical attributes and not accomplishments are what matter most when it comes to female staff.  Writing about himself on his blog in the third-person, Mr. Sullivan states that two things interest him: (1) flowing church vestments, and (2) the singer Jennifer Lopez's "scant stage attire". In fact, Mr. Sullivan occupies an office with glass walls at Catholic Charities.  Facing out of the office, he keeps a life-size cutout of a scantily-clad Beyonce for all of the employees at Catholic Charities to see.

31.     Because Ms. Kenny does not model the physical attributes that catches Mr. Sullivan's eye and is not a man, various discriminatory and illegal actions have been taken or allowed to be taken against Ms. Kenny.

32.     Mr. Sullivan's mindset and actions towards women are mimicked pervasively throughout the management of the company.  For example, Frederick Joseph was a marketing manager specifically assigned to supervise and manage certain employees at Catholic Charities, not including Ms. Kenny.  Despite that, Mr. Joseph was given free rein to review and direct the work of women not under him, including Ms. Kenny.  Mr. Joseph openly exploited this to flirt with and speak suggestively about the appearance of women.  During a work event, Mr. Joseph even commented to Ms. Kenny that others were looking at them like they were a couple.

33.     Although Mr. Joseph's behavior was well known and repeatedly complained about, it was not until women at Catholic Charities, including Ms. Kenny, banded together in August 2016 to jointly complain about Mr. Joseph that any actions by Catholic Charities were taken.  An investigation was commenced, and, rather than terminate Mr. Joseph, he was allowed to resign. Ms. Kenny's immediate supervisor, Paul Costiglio, who supervised the other women who were part of the group of women complaining about Mr. Joseph's actions as well as Mr. Joseph, was sent for supervisory training for watching and allowing Mr. Joseph's actions for turning a blind eye to Mr. Joseph's actions.

34.     Since that time, the situation at Catholic Charities has only gotten worse, and punitive and retaliatory measures taken against Ms. Kenny have been systematically rolled out, and Mr. Sullivan makes it apparent of his preference for younger, attractive women.

35.     Mr. Sullivan invited these male and younger, more attractive female coworkers to outside events associated with the department's work, while excluding Ms. Kenny from these events by not inviting her.  This occurred, for example in April 2019, when Ms. Kenny was not invited to an event held by Mercy Center, while her younger, more attractive coworkers were.

36.     A younger, more attractive woman was promoted to social media specialist, a position within Ms. Kenny's department.  Mr. Sullivan, who previously spent very little time visiting anyone in the department began openly visiting this woman and spending large amounts of time with her at her desk.  He would also voice his approval for her work, although she had limited success at her position.

37.     Mr. Sullivan also invited this woman to assist him with producing his weekly radio program, "JustLove", a job that requires her to work with him individually each week.  This woman's predecessor, an older, less attractive woman, was never asked to assist with Mr. Sullivan's radio program.

38.     Mr. Sullivan regularly asks this younger, more attractive woman to accompany him to evening events, as well as to his apartment for a December holiday party held at his home.  He even went so far as to openly invite this woman, along with another young, attractive woman who works at Catholic Charities, on a work trip to Central America in April 2019, excluding Ms. Kenny from the trip.  Ms. Kenny needed to be on this trip because she was directed to produce content for Catholic Charities related to the trip, even though she was not present for it.  The content Ms. Kenny was directed to produce were in-depth blog posts, the basis of which would be used for fundraising, and all of which Ms. Kenny had to produce without the benefit of having actually been present on the trip.

39.     Mr. Sullivan's penchant for young, attractive women is so prevalent that it has become a joke among the staff at Catholic Charities.

40.     Mr. Sullivan and Mr. Costiglio have set out to retaliate against Ms. Kenny for complaining about sexual harassment at Catholic Charities.

41.     Ms. Kenny's desk space and location were also downgraded.  She was moved from an office to a small desk in a hallway in January 2017.  The men in her department, as well as the younger, more attractive women, were given large desks to work at that were not situated in a hallway.  Ms. Kenny was the only employee in her department treated this way.

42.     Ms. Kenny has been excluded from high-level meetings to which her other departmental staff coworkers, who are men and two younger, attractive women, were asked to attend.  One such meeting was the March 2019 Board of Directors meeting which Ms. Kenny was excluded from, but her coworkers were invited to.

43.     Upon information and belief, a secret leadership training program was created by Mr. Sullivan.  Mr. Sullivan placed only persons under 40 years of age in the program to afford them with training and promotion opportunities within Catholic Charities.  Persons over 40 years of age, including Ms. Kenny, were not told about the program or invited to join, nor were they afforded the training and promotional opportunities that were given to the members of the secret program.

44.     Despite outperforming her peers, in March 2019, Ms. Kenny was placed under the supervision of two male employees, one of which was on her level on the organizational chart, and one who was below her.  These two men were given authority over Ms. Kenny's writing product, even though Ms. Kenny's track record was superior to theirs and these men have significantly less

writing experience than Ms. Kenny.  These men were put in a position over Ms. Kenny even though one of the men had only graduated college the year before, and had been initially hired to fill a secretarial/support-type position.

45.     On March 14, 2019, Ms. Kenny's job duties were changed, downgrading her position and subjecting her to new levels of supervision.

46.     Until then, and for years, Ms. Kenny had final authority over blog posts, including topics, stories, writing, editing, and online posting.  Ms. Kenny also had final authority and control over the online formatting of these blog posts.

47.     On March 14, 2019, Ms. Kenny was locked out of the website.  She was instructed to submit her blog posts to these two male employees who would be her "final touchpoint" before the blog posts were approved and placed on the website.

48.     While Mr. Costiglio attempted to pass this off as simply ensuring that the blog posts met best practices for web publishing and structure, in reality these two male employees were given final authority over Ms. Kenny and became her supervisors, subjecting her to another layer of supervision and scrutiny, while taking away authority and responsibility from her.

49.     Ms. Kenny was directed to pull together copy for four news features each week. These two male employees would then have weekly meetings with Ms. Kenny and other staff during which Ms. Kenny would be directed as to which stories she would be allowed to write.

50.     The two men who were placed in supervision of her work product were allowed to make changes to Ms. Kenny's writing, delete attributions allowing it to appear that Ms. Kenny was plagiarizing materials, and placing their bylines on Ms. Kenny's published works or ideas to

pass them off as their own.  All of this was despite the fact that Ms. Kenny was promised by Mr. Costiglio that they would not be allowed to alter her work editorially.

51.     The changes that these two men were allowed to make caused Ms. Kenny's articles to be marked by Google as duplicate copy created with the intent to be deceptive and manipulate search engine results, resulting in Ms. Kenny's articles being removed from search results for a month, and, thereafter, being demoted in the search result rankings.  This decreased Ms. Kenny's blog entry readership, as well as associated her name with plagiarized and duplicative copy.

52.     Moreover, the positions that these two men were placed in were not announced, nor was Ms. Kenny was invited to apply for the positions, despite Ms. Kenny's far superior success and experience at Catholic Charities, and despite the fact that many of her job duties, prior to these duties being given to these two men, were the same as what these two men were directed to do in supervising and directing Ms. Kenny's work.

53.     No other employees were put under the supervision of these two male employees.

54.     Upon information and belief, Mr. Sullivan was aware of, directed, and/or approved of all of these actions against Ms. Kenny, and he regularly met with Mr. Costiglio, who reports to him, to discuss these matters.

55.     On March 25, 2019, Ms. Kenny submitted a grievance regarding the discriminatory acts against her to the Human Resources department at Catholic Charities.

56.     Upon information and belief, although Ms. Kenny submitted the grievance to Human Resources, the grievance was shared with Catholic Charities' staff.  Both supervisory staff and co-workers began shunning Ms. Kenny, creating an even more hostile environment for Ms. Kenny at Catholic Charities.

57.     Mr. Sullivan excluded Ms. Kenny from participation in the event at Mercy Center in April 2019 as well as the trip to Central American in April 2019.

58.     Ms. Kenny's co-workers began to shun her, excluding her from informal lunches they would regularly have before the grievance was filed.

59.     In large part, Mr. Costiglio gave Ms. Kenny the silent treatment, and on the occasions he did speak with her, he was rude and otherwise denigrating towards her.

60.     On May 6, 2019, Ms. Kenny was directed by Mr. Costiglio to do what the two men had been doing, *i.e.*, to modify stories to evade Google's systems by changing the titles, some wording, and the bylines on her stories.  Ms. Kenny explained to Mr. Costiglio that such behavior was dishonest and a violation of Google standards, and then complained to Joy Jasper, the Human Resources Director.   Ms. Jasper told Ms. Kenny that if she did not follow her supervisor's instructions to evade Google's penalties by churning out duplicative and plagiarized work, that she would face charges of insubordination.

61.     On May 14, 2019, Ms. Jasper denied Ms. Kenny's grievance.

62.     Ms. Kenny was constructively discharged as a result of the intolerable environment at Catholic Charities.  Among other things, her coworkers shunned her; her direct supervisor rarely spoke to her, and, when he did, he was rude and denigrating to her; many of her responsibilities were given to younger, male co-workers who were also tasked with supervising Ms. Kenny's work; Ms. Kenny was placed at a small desk in a hallway, unlike the other employees at Catholic Charities; Ms. Kenny was excluded from promotions and performance-based raises; Mr. Sullivan openly excluded her from events and travel, choosing instead to invite younger, more attractive women to participate in activities; her co-workers were allowed to take credit for her writing, as

well as churn duplicate and plagiarized copy of her work resulting in her work being delisted and penalized by Google; and the human resources department failed to adequately investigate her complaints, and became complicit in the discrimination by threatening Ms. Kenny with retaliatory actions.

63.    As a result of all the foregoing actions, Ms. Kenny resigned her position on May 20, 2019.

FIRST CAUSE OF ACTION
*Retaliation Under Title VII*

64.    Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

65.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to… discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66.    By the acts and practices described above, Defendants retaliated against Ms. Kenny for her opposition to unlawful discrimination under Title VII, including, *inter alia*, by creating a hostile work environment, constructively terminating her, failing to provide her with promotion opportunities, and failing to provide her with performance-based raises in violation of Title VII.

67.    Defendants acted with malice and reckless indifference to Ms. Kenny's rights under Title VII.

68.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

SECOND CAUSE OF ACTION
*Retaliation Under the NYSHRL*

69.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

70.     By the acts and practices described above, Defendants retaliated against Ms. Kenny for her opposition to unlawful discrimination under the NYSHRL, including, *inter alia*, by creating a hostile work environment, constructively terminating her, failing to provide her with promotion opportunities, and failing to provide her with performance-based raises in violation of the NYSHRL.

71.     Defendants acted with malice and reckless indifference to Ms. Kenny's rights under the NYSHRL.

72.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

THIRD CAUSE OF ACTION
*Retaliation under the NYCHRL*

73.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

74.     By the acts and practices described above, Defendants retaliated against Ms. Kenny for her opposition to unlawful discrimination under the NYCHRL, including, *inter alia*, by

creating a hostile work environment, constructively terminating her, failing to provide her with promotion opportunities, and failing to provide her with performance-based raises in violation of the NYCHRL.

75.     Defendants acted with malice and reckless indifference to Ms. Kenny's rights under the NYCHRL.

76.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

FOURTH CAUSE OF ACTION
*Gender Discrimination Under the NYSHRL*

77.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

78.     By the acts and practices described above, Defendants discriminated against Ms. Kenny in the terms and conditions of employment on the basis of her gender, including, *inter alia*, by creating a hostile work environment because of her gender, in violation of the NYSHRL.

79.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION
*Age Discrimination under the NYSHRL*

80.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

81.     By the acts and practices described above, Defendants discriminated against Ms. Kenny in the terms and conditions of employment on the basis of her age, including, *inter alia*, by creating a hostile work environment because of her gender, in violation of the NYSHRL.

82.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

## SIXTH CAUSE OF ACTION
*Gender Discrimination under the NYCHRL*

83.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

84.     By the acts and practices described above, Defendants discriminated against Ms. Kenny in the terms and conditions of employment on the basis of her gender, including, *inter alia*, by creating a hostile work environment because of her gender, in violation of the NYCHRL.

85.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

86.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

SEVENTH CAUSE OF ACTION
*Age Discrimination under the NYCHRL*

87.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

88.     By the acts and practices described above, Defendants discriminated against Ms. Kenny in the terms and conditions of employment on the basis of her age, including, *inter alia*, by creating a hostile work environment because of her gender, in violation of the NYCHRL.

89.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

EIGHTH CAUSE OF ACTION
*Aiding and Abetting Discrimination and Retaliation under the NYSHRL*

90.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

91.     New York Executive Law Section 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

92.     Defendants aided and abetted the gender discrimination, age discrimination, and retaliation against Ms. Kenny.

93.     Catholic Charities have, and throughout Ms. Kenny's employment had, a continuous practice or policy of discouraging women from reporting gender and age, and failing to prevent or stop sexual harassment.

94.     Catholic Charities fosters, and throughout Ms. Kenny's employment fostered, an environment where women do not feel comfortable reporting gender and age discrimination.

95.     Catholic Charities has, and through Ms. Kenny's employment had, a continuous practice or policy of failing to properly investigate complaints of gender harassment and age discrimination.

96.     Catholic Charities has, and through Ms. Kenny's employment had, a continuous practice or policy of intimidating and/or ignoring employee witnesses to gender and age discrimination, including but not limited to making threats of adverse employment action should the employees speak out against said discrimination.

97.     The individual defendants aided and abetted the gender and age discrimination by, among other things, subjecting Ms. Kenny to said discrimination, allowing said discrimination to occur, failing to investigate said discrimination, and by creating a hostile work environment that resulted in Ms. Kenny's constructive termination.

98.     As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

<u>NINTH CAUSE OF ACTION</u>
*Aiding and Abetting Discrimination and Retaliation Under the NYCHRL*

99.     Ms. Kenny repeats and realleges each and every allegation as if fully set forth herein.

100.    New York City Administrative Code Section 8-107(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

101.   Defendants aided and abetted the gender discrimination, age discrimination, and retaliation against Ms. Kenny.

102.   Catholic Charities have, and throughout Ms. Kenny's employment had, a continuous practice or policy of discouraging women from reporting gender and age, and failing to prevent or stop sexual harassment.

103.   Catholic Charities fosters, and throughout Ms. Kenny's employment fostered, an environment where women do not feel comfortable reporting gender and age discrimination.

104.   Catholic Charities has, and through Ms. Kenny's employment had, a continuous practice or policy of failing to properly investigate complaints of gender harassment and age discrimination.

105.   Catholic Charities has, and through Ms. Kenny's employment had, a continuous practice or policy of intimidating and/or ignoring employee witnesses to gender and age discrimination, including but not limited to making threats of adverse employment action should the employees speak out against said discrimination.

106.   The individual defendants aided and abetted the gender and age discrimination by, among other things, subjecting Ms. Kenny to said discrimination, allowing said discrimination to occur, failing to investigate said discrimination, and by creating a hostile work environment that resulted in Ms. Kenny's constructive termination.

107.   As a direct and proximate result of this unlawful conduct, Ms. Kenny has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damages unless and until this Court grants relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Ms. Kenny respectfully requests judgment against Defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally, for all

         monetary and non-monetary suffered by Ms. Kenny;

(b)     Punitive damages against the defendants, jointly and severally;

(c)     Liquidated damages against the defendants, jointly and severally;

(d)     Prejudgment interest on all amounts due;

(e)     Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(f)     Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        April 26, 2020

                                    By:     /s/
                                            Gregory P. Mouton, Jr., Esq.
                                            Law Office of Gregory P. Mouton, Jr., LLC
                                            *Attorneys for Plaintiff Alice Kenny*
                                            1441 Broadway, 6th Floor
                                            New York, NY  10018
                                            Phone & Fax: (646) 706-7481

20 Civ. 3269

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALICE KENNY,

Plaintiff,

-against-

CATHOLIC CHARITIES COMMUNITY SERVICES, ARCHDIOCESE OF NEW YORK;
KEVIN SULLIVAN; PAUL COSTIGLIO; and JOY JASPER,

Defendants.

---

COMPLAINT

---

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC

1441 Broadway, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481